IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMES N. KORCZ,<br><br>Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 16-1039 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff James N. Korcz (the "Plaintiff") from a denial of social security disability benefits on March 30, 2015, which was upheld by the Appeals Council on December 23, 2015.  Complaint ¶ 8 [Dkt. No. 1].  For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Memorandum Opinion and Order's reasoning.

I. <u>STANDARD OF REVIEW</u>

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence" means "'more than a

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards.  See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).  The Court's review of legal issues is plenary.  Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

3

> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

II.   **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff was born in 1971, and was 37 years old on the date of injury onset and 43 on the date of the ALJ's disability determination. R. 16. Plaintiff listed several conditions that limited his ability to work: bipolar disorder, schizophrenia, ADHD, alcoholism, obsessive compulsive disorder, scoliosis, and kyphosis. R. 247. At that time he was 6'1 and weighed 295 pounds. Id. Plaintiff's weight has fluctuated over the years. His medical records indicate that he has been weighed variously 285 pounds, R. 316; 308 pounds, R. 343; 306 pounds, R. 416.

In examinations where specific clinical findings were reported, no examining physician has ever included a diagnosis of obesity, nor stated that obesity affects his day to day life.

4

R. 317, 334-35, 416-417.  For instance, Dr. Francky Merlin, who performed an October 4, 2010 consultative medical examination of Plaintiff, R. 334-338, observed that Plaintiff's abdomen was obese, but "otherwise soft and nontender."  R. 335.  Plaintiff's neck, lungs, and heart were all normal, as well.  Id. Plaintiff's station and gait were normal, and he had no difficulty getting up from a sitting position or getting on and of the exam table.  Id.  He was also able to complete several other physical assessments, such as squatting and walking on his heels and toes.  Id.  Likewise, when Plaintiff was evaluated in June 2013 by Dr. Alan Friedman, he weighed 306 pounds and was measured at six feet tall.  R. 416.  He performed well physically during the examination, and was able to walk heel-to-toe without issue, could walk on his toes and on his heels, and could squat.  R. 417.

But, at other times, Plaintiff's obesity has been cited as a condition.  Plaintiff received a May 4, 2011 pre-placement medical exam that disqualified him from certain work and was found to have "Class III obesity with resting tachycardia."  R. 421.  On July 3, 2013, Dr. Deogracias Bustos, a state agency medical consultant, reviewed the evidence and identified Plaintiff's impairments to include obesity.  R. 114.  He determined it was "severe."  Id.  Likewise, on September 20, 2013, Dr. Andrew Przybla reviewed and affirmed Dr. Bustos's

5

opinion that Plaintiff's obesity was severe.  R. 116.  At the time of Plaintiff's hearing before the ALJ, he stated he was 6'2 and weighed 290 pounds.  R. 30.

### III. **ALJ DETERMINATION**

The ALJ determined that Plaintiff was under a disability, "but that a substance use disorder is a contributing factor material to the determination of disability."  Record ("R.") 11.  As such, Plaintiff was determined not to be disabled under the Social Security Act from the alleged onset date through the date of the ALJ's decision.  Id.

At Step One, the ALJ determined that Plaintiff had engaged in substantial gainful activity since the alleged onset date of January 1, 2009.  R. 13.  However, the ALJ also determined there had been a twelve month period of inactivity.  Id.  At Step Two, the ALJ determined that Plaintiff has the following severe impairments: a back impairment, an affective disorder and a substance addiction.  20 C.F.R. 404.1520(c).  R. 14.  At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 14.

Turning to the Step Four Residual Functional Capacity ("RFC") analysis, the ALJ determined that:

> After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(a) except he is able to perform occasional postural maneuvers except that he can never climb ropes, ladders [or] scaffolds. He is unable to meet the minimum psychiatric demands of competitive work when abusing alcohol; he cannot interact with supervisors, co-workers or the general public.

R. 15. With this RFC assessment, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 16.

Finally, at Step Five, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity based on all of the impairments, "including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." Id. However, the ALJ then addressed the impact of the substance use disorder. He found that if Plaintiff ceased his substance use, his remaining limitations would nevertheless cause more than a minimal impact on his ability to perform basic work activities. R. 17. "Therefore, [Plaintiff] would continue to have a severe impairment or combination of impairments." R. 17. Absent substance use, the ALJ determined Plaintiff's RFC would be "to perform medium work as defined in 20 CFR 404.1567(c) except he is limited to occasional postural maneuvers except that he can never climb ropes, ladders, scaffolds and is able to perform simple, repetitive tasks

7

allowing for occasional interaction with co-workers, supervisors and the general public." R. 17-18. Remaining unable to perform past work, R. 20, the ALJ determined Plaintiff would still be able to perform "a significant number of jobs in the national economy[.]" Id. As such, the ALJ determined "[t]he substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use." R.21. Accordingly, "the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." Id.

**IV. ANALYSIS**

At step two of the familiar five-step process, the ALJ is required to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe". 20 C.F.R. 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. Likewise, an impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. 404.1521; SSR 85-28, 96-3p, 96-4p.

Here, Plaintiff contends the ALJ erred by failing to consider his obesity as a severe condition.  In response, the Commissioner argues that the mere presence of "obesity" is insufficient – it must be shown that the obesity causes limiting effects that demonstrate it to be a severe impairment.  SSR 02-1P, 2002 WL 34686281, at *1. (terminology around obesity may describe the extent of the obesity, but it does not "correlate with any specific degree of functional loss.").  Even if obesity was severe, Defendant argues, the ALJ's omission of any discussion related to it is harmless.

As set forth in SSR 02-1P, which deals with obesity, Level III BMI (BMI over 40) is termed "extreme" obesity.[1]  SSR 02-1P, 2002 WL 34686281, at *2.  Nevertheless, the Commissioner is correct, as

> [t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment. Neither do descriptive terms for levels of obesity (e.g. "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes.  Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether impairment is severe.

Id.  That said, "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems.  It commonly leads to, and often complicates, chronic

---

[1] Plaintiff's BMI was stated to be 42 in the state agency report. R. 118.

9

diseases of the cardiovascular, respiratory, and musculoskeletal body systems." SSR 02-1P, 2002 WL 34686281, at *3.

As the SSR sets forth:, "we will consider obesity in determining whether:

- The individual has a medically determinable impairment. . . .

- The individual's impairment(s) is severe. . . .

- The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . .

- The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy. However, these steps apply only in title II and adult title XVI cases. . . .

Id.

In an appeal arising from a denial of benefits, "remand is appropriate 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" See A.B. v. Colvin, 166 F. Supp. 3d 512, 518 (D.N.J. Feb. 16, 2016) (quoting Dobromowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). "Indeed, a decision to 'award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates

10

that the claimant is disabled and entitled to benefits." Id. (quoting Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984)).  The Court finds that the ALJ's exclusion of obesity from the severity analysis (and the potential implications that omission has for the remainder of the analysis) is problematic in that it prevents the Court from determining that the decision was not one based on substantial evidence. Williams v. Comm'r of Social Sec., 2008 WL 539056, at *2 (D.N.J. Feb. 25, 2008) ("In this case it is clear that the ALJ has failed to fully develop the record as to Williams's obesity and the effect that it had on her ability to engage in gainful employment during the twenty months between her first and second applications."). There is simply no indication in the decision of the ALJ that Plaintiff's obesity was taken into account at Step Two and beyond.

    The Court disagrees with the Commissioner's position that such error is harmless.  Although it is certainly true that where an ALJ's opinion finds other conditions severe, the analysis can proceed beyond Step Two, as it did here, it is also true that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02-1P, 2002 WL 34686281, at *1.  Just because the analysis proceeded past Step Two, or just because the ALJ's RFC is equally limiting to the

11

state agency physicians, does not inoculate the decision from needing to consider Plaintiff's obesity. An adjudicator should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." Id. The Court cannot conclude that such consideration was made here.

All of this is not to say that Plaintiff's weight requires a finding of severe obesity; it is simply to say that evidence regarding Plaintiff's obesity needs to be considered and weighed in relation to the remainder of the evidence in the record. Eskridge v. Astrue, 569 F. Supp. 2d 424, 439 (D.N.J. Aug. 7, 2008) ("In the case at bar, the ALJ did not explain if or how plaintiff's alleged obesity figured into her determination at any point of the five step process, nor did she adopt the recommendations of doctors who were aware of plaintiff's obesity; consequently, the court remands to the ALJ for consideration of whether plaintiff is obese and, if so, how consideration of this impairment effects the other steps of the disability determination sequence.").[2] It may well be the case

---

[2] The Court does note that "[r]emand on the sole ground to reconsider obesity . . . is only required when it would affect the outcome of the case." Eskridge, 569 F. Supp. 2d 424, 439. However, in this case, given the determination that obesity is severe by state agency physicians and that it is associated with resting tachycardia, among other issues, the determination on

12

that the ALJ will arrive at the same decision after he properly considers the obesity of Plaintiff.  At this juncture, however, the ALJ must set forth his consideration of Plaintiff's obesity.  As such, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.[3]

ACCORDINGLY, it is on this 28th day of February, 2017,

**ORDERED** that the determination of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

---

that issue may (or may not) effect the outcome.  Diaz v. Comm'r of Social Sec., 577 F.3d 500, 504 (3d Cir. 2009) (noting, in regard to Rutherford v. Barnhart, a case in which failure to consider obesity was not grounds for remand, that "We then concluded that Rutherford's claim would fail in any event, because Rutherford never argued that her obesity impacted her job performance.").  Here, the record, if only mildly, supports the notion that Plaintiff's obesity affects his job performance. R. 421 ("Your examination was noted for the following abnormalities that preclude work as a hazardous waste laborer: . . . (2) Class III obesity with resting tachycardia (fast heart rate)[.]").  Further, Plaintiff was found to have the severe impairment of a back disorder.  Diaz, 577 F.3d at 504 ("[Plaintiff's] morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis.").  "SSR 02-1P also underscores the interplay between obesity and joint dysfunction, mobility, and musculoskeletal function."  Id.

[3] The Court does not reverse and award benefits.  "The decision to direct the district court should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Payton v. Barnhart, 416 F. Supp. 2d 385, 390 (E.D. Pa. 2006) (quoting Podedworny v. Harris, 745 F.2d 210, 221-222 (3d Cir. 1984)).

13

**ORDERED** that the Clerk of the Court is directed to close the case file on this matter.

s/Renée Marie Bumb  
RENÉE MARIE BUMB  
UNITED STATES DISTRICT JUDGE